## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| JACOB E. ABILT[1]<br>Maryland, United States | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.:_____<br>) |
| CENTRAL INTELLIGENCE AGENCY<br>Washington, DC 20505 | ) **Jury Demanded**<br>)<br>) |
| Serve: Eric H. Holder, Jr.,<br>Attorney General of the United States, or<br>c/o Designated Representative<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530-0001 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Serve: Ronald C. Machen, Jr., United States<br>Attorney for the District of Columbia, or<br>c/o Designated Representative<br>United States Attorney's Office<br>555 Fourth Street, N.W.<br>Washington, DC 20530 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| JOHN O. BRENNAN, Director,<br>U.S. Central Intelligence Agency<br>Office of the Director<br>Washington, DC 20505 | )<br>)<br>)<br>)<br>) |
| Serve: Eric H. Holder, Jr.,<br>Attorney General of the United States, or<br>c/o Designated Representative<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530-0001 | )<br>)<br>)<br>)<br>)<br>)<br>) |

---

[1] Due to the sensitive nature of the Plaintiff's job duties, this Complaint is being filed under a pseudonym of Jacob Abilt and general domicile.

Serve:  Ronald C. Machen, Jr., United States          )
Attorney for the District of Columbia, or             )
c/o Designated Representative                          )
United States Attorney's Office                        )
555 Fourth Street, N.W.                                )
Washington, DC 20530                                   )
                                                       )
                  Defendants.                          )
_____)

## COMPLAINT

**COMES NOW** the Plaintiff, Jacob E. Abilt, by and through undersigned counsel, and files suit against the named Defendants, and for cause of action states as follows:

1.      Plaintiff Jacob E. Abilt ("Plaintiff" or "Mr. Abilt") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, Section 501 the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* ("Rehabilitation Act"); the Civil Rights Act of 1991, 42 U.S.C. § 1981a; for relief from discrimination based on disability (narcolepsy), race (African American), hostile work environment, and retaliation (prior protected activity).

2.      Defendant United States Central Intelligence Agency ("CIA") and Defendant Director   John O. Brennan ("the Director") (collectively, "Defendants") discriminated against Plaintiff on the basis of his disability (narcolepsy) and race (African American), engagement in prior protected activity, and subjected him to a hostile work environment during the course of his employment with the CIA.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to Title VII, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(1) and (3).   Further, this Court has jurisdiction over this Complaint because it presents a question of federal law.  28 U.S.C. §§ 1331 and 1337.

2

4.      Venue properly lies within this Court pursuant to 28 U.S.C. § 1391, 29 U.S.C. § 1402 and 42 U.S.C. § 2000e-5(f)(3).  Director Brennan is an officer of the CIA, and performs a significant amount of his official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia.  *See, e.g., Bartman v. Cheney*, 827 F.Supp. 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of 28 U.S.C. § 1391).

5.      A substantial part of the events or omissions giving rise to this Complaint occurred within the offices of the Central Intelligence Agency.

## PARTIES

6.      Plaintiff is a resident of Maryland and a United States citizen.   At all relevant times, Plaintiff was an employee of the United States Central Intelligence Agency ("CIA").

7.      Defendant CIA is an executive agency of the United States government and operates in Washington, D.C.

8.      Director Brennan is being sued in his official capacity as the Director of the CIA.  Director Brennan's office is located in the District of Columbia.

9.      Defendants are subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendants; in addition, Defendants are the employer of persons who have committed negligent, discriminatory acts and/or omissions against Plaintiff within the course and scope of their employment.   Therefore, Defendants are liable pursuant to the doctrine of *respondeat superior*.

## EXHAUSTION OF REMEDIES

10.     Plaintiff has exhausted all of his administrative remedies.

11.     On February 25, 2013 Plaintiff timely filed an appeal of a final Agency decision with the Equal Employment Opportunity Commission ("EEOC") [Appeal No. 0120131424].

12.     Upon receipt of the EEOC's Decision, Plaintiff sought reconsideration [Request No. 0520130630].  The EEOC issued its Denial on November 14, 2013, which provided Plaintiff with 90-days from receipt of the Denial to file his lawsuit.

13.     Plaintiff hereby timely files this action within 90-days after receipt of the EEOC's Denial.

## FACTS

14.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

15.     In June 2006, Plaintiff commenced his employment as an Applications Developer with the CIA.

16.     At or around the time Plaintiff was hired, he informed his supervisors of his disability (narcolepsy), which had been medically diagnosed.

17.     Plaintiff successfully performed in the Applications Developer position and was elevated to the position of Technical Operations Officer in or around May 2008.

18.     In early 2009, Plaintiff began experiencing symptoms of his disability in the workplace.  Defendants' response led to Plaintiff filing an EEO claim in May 2009 based on his disability and race, as well as harassment.

19.     The parties agreed that as an accommodation of Plaintiff's disability he could take brief naps at his desk, provided that he make-up up the time either by foregoing a lunch break and/or working beyond his scheduled tour of duty.

20.     Plaintiff was forced to file another EEO claim in June 2010 based on his race, disability and reprisal, as well as harassment.

21.     In February 2011, Plaintiff's supervisor saw him taking a nap at his desk, as permitted by accommodation for his disability.

22.     Plaintiff's supervisors began pressuring him about taking agency-sanctioned naps at his desk and continued the harassment despite having notice of Plaintiff's disability and the accommodation the Defendants previously agreed upon.

23.     Beginning in February 2011, Plaintiff's supervisors (White, no known disability or prior EEO activity) placed him on an Advanced Work Plan ("AWP"), requiring him to submit weekly progress reports and attend weekly meetings with them allegedly to discuss his work, despite the fact that the supervisors had not previously notified Plaintiff of any performance issues that merited this level of supervision.

24.     By this time Plaintiff had received successful performance appraisals for each reporting period since he began his employment in June 2006.

25.     Since December 2010, Plaintiff had also been approved for the Student Repayment Letter, a benefit only extended to employees performing successfully.

26.     None of Plaintiff's similarly situated co-workers, (non-African American, no known disability or prior EEO activity) was required to submit weekly reports or attend weekly meetings with the supervisors.

27.     Plaintiff's supervisors used the weekly meetings as a forum to harass him about his disability, repeatedly questioned control of his narcolepsy and demanded that he "try not to fall asleep at his desk."  The supervisors also began falsely accusing Plaintiff of performing below standards, yet failed to provide him with any clear guidelines of what they sought given that he had been performing his work successfully for over four (4) years.

28.     During March and April 2011, Plaintiff worked on a project overseas for several weeks, and received high praise for demonstrating skills "that will enable greater efficiency in several operations," his diligent research, his active participation in group discussions, and learning "rudimentary German."  Technical Operations Officers, like Plaintiff, must successfully meet certain prerequisites, including performance measures, to qualify for overseas assignments.

29.     Plaintiff returned from his overseas assignment and was required to resume his weekly reporting and meeting schedule under the AWP.

30.     On or around May 10, 2011, Plaintiff's supervisors recommended that he submit to a Fitness for Duty Evaluation ("FFD") to be conducted by the Office of Medical Services, which ultimately determined that Plaintiff was fit to perform his duties with the agreed accommodations.

31.     On May 19, 2011, Plaintiff made initial contact with an EEO officer and on July 1, 2011 he filed a formal complaint with the Agency alleging discrimination and a hostile work environment based on his disability, race, and reprisal for having engaged in prior EEO activity.

32.     Between February and July 2011, Plaintiff was subjected to a persistent and continuous pattern of harassment calculated to terminate his employment with the Agency.  Such harassment included, but was not limited to, submission of weekly reports and attendance at weekly meetings with supervisors, falsely accusing him of not performing up to standards, harassing him about his disability, failing to provide him with opportunities for growth in the division, intimidating him about taking approved naps at his desk, confronting Plaintiff with complaints solicited from his co-workers, communicating with Plaintiff in a demeaning manner - all of which created a hostile work environment for Plaintiff.

33.     The work environment had become so abusive and hostile for Plaintiff that he requested a transfer to a different work group.

34.     However, by the time Plaintiff was transferred to the new work group in August, 2011, he had received an overall performance appraisal of "unsuccessful," the first in his tenure at the Agency.

35.     On August 12, 2011, Plaintiff was notified that his supervisors had requested that a Personnel Evaluation Board ("PEB") be convened to have his employment with the CIA terminated.

36.      Around the same time, Plaintiff's supervisors also terminated his computer accounts, thereby impairing his ability to defend himself properly in the PEB process.

37.     One of Plaintiff's supervisors, which he named in a previous EEO action, was a voting member of the PEB convened to consider Plaintiff's termination.

38.    The PEB ultimately voted to terminate Plaintiff's position. In its official memorandum supporting the decision to terminate Plaintiff's employment, the PEB considered Plaintiff's disability and prior EEO activity, noting that he had previously utilized the ADR process for EEO claims and rejected settlement offers, and that there was a discussion whether there was any merit to his complaints of discrimination and retaliation.

39.    On October 31, 2011, Plaintiff was notified of the PEB's termination decision, relieved of duties, and escorted from the building by security and in the public view of his co-workers.

40.    Upon information and belief, similarly situated employees of a different protected class and/or employees who have not filed complaints are not subjected to the same foregoing hostile work environment and unlawful treatment.

## CAUSES OF ACTION

### COUNT ONE
### Rehabilitation Act of 1973, as amended,
### 29 U.S.C. § 794, *et seq.*
### (Disability Discrimination and Failure to Accommodate)

41.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

42.    At all relevant times, the Defendants are recipients of federal funding within the meaning of the Rehabilitation Act.

43.    Plaintiff suffers from narcolepsy, and as such is a qualified individual with a disability.

44.     Plaintiff's medical condition substantially limits major life activities; namely, his ability to care for himself, ability to concentrate, ability to think, ability to drive and ability to sleep.

45.     Plaintiff's condition is permanent.

46.     At the time of his aforementioned adverse employment actions and to the present, Plaintiff had the necessary knowledge, skills and experience to successfully perform the duties and responsibilities of his position.

47.     The Defendants' intimidation about taking his agreed upon naps, placing him on AWP, requiring him to submit weekly reports, requiring him to attend weekly meetings, making false accusations against Plaintiff about allegedly performing below standards, requiring him to submit to a FFD, soliciting of complaints against Plaintiff from his coworkers, demeaning manner toward Plaintiff, providing a knowingly undeserved negative performance evaluation, convening of a PEB to terminate Plaintiff, revocation of his computer accounts, and terminating his employment are materially adverse actions.  Any reason proffered by the Defendants would not be legitimate, and it would be pretext.

48.     Prior to the adverse actions complained of herein, Defendants were aware that Plaintiff suffered from narcolepsy.

49.     Further, because Plaintiff suffers from narcolepsy, he is entitled to a reasonable accommodation under the Rehabilitation Act.

50.     The medical documentation provided by Plaintiff to Defendants established that his medical condition is disabling and significantly affected a major life activity.

51.     Plaintiff made repeated requests to Defendants for a reasonable accommodation prior to and after his EEO and EEOC complaint filings.

52.     Plaintiff repeatedly informed his supervisors of his disability and that he needed the previously agreed upon reasonable accommodation (i.e., brief naps that he would make up).

53.     Upon information and belief, Defendants provided an accommodation to similarly situated employees (White, no known EEO activity).

54.     Defendants were unwilling to assist Plaintiff in receiving his reasonable accommodation.

55.     The reasonable accommodation requested by Plaintiff would not have caused an undue burden or hardship on Defendants.

56.     Defendants' failure to provide Plaintiff the reasonable accommodation requested deprived him of the opportunity to be as productive as his co-workers in the same work environment.

57.     Plaintiff has been treated differently and subjected to different terms and conditions of employment due to his disability.

58.     Defendants intentionally discriminated against Plaintiff because of his disability.

59.     Defendants have limited, segregated and classified Plaintiff in a way which deprives him of employment opportunities because of his disability.

60.     Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

61.     Plaintiff believes that he was terminated because his disability.

62.     Due to Defendants' actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

63.     Plaintiff has incurred lost wages and loss of career opportunity now and into the future, all without any negligence being attributed to Plaintiff.

64.     As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

65.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.   Further, Defendants' treatment and actions were ongoing.

66.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

   a.   Award compensatory damages of Three Hundred Thousand Dollars ($300,000.00);

   b.   Award lost wages and benefits, with interest;

   c.   Reinstatement;

   d.   Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

e.  Award reasonable attorney fees, costs, and expenses incurred for this action;

f.  Order Defendants to institute a policy and procedure to be implemented against discrimination;

g.  Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

h.  Supervisory training for the supervisors at issue herein;

i.  Award equitable, declaratory, and injunctive relief; and

j.  Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. §§ 2000e, *et seq.*
### (Employment Discrimination on the Basis of Retaliation)

67.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

68.    In addition to repeatedly contacting the EEO office, Plaintiff regularly complained to his supervisors and throughout his chain of command regarding the discriminatory and retaliatory treatment and hostile work environment that he was experiencing.

69.    Soon after complaining, Plaintiff was further intimidated about taking his agreed upon naps, was placed on AWP, required to submit weekly reports, required to attend weekly meetings, falsely accused of performing below standards, was required to submit to a FFD, had complaints against him solicited from his coworkers, was regularly addressed in a demeaning manner, provided an undeserved negative performance evaluation, had a PEB convened to terminate him, had his computer accounts revoked

and had his employment unlawfully terminated, as well as other adverse actions alleged throughout this Complaint.

70.    Defendants subjected Plaintiff to the aforementioned adverse employment actions because of his engagement in protected EEO activity in violation of Title VII.

71.    Defendants, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff, by an EEO representative, or otherwise engaged in the complaint process.

72.    The retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

73.    Similarly situated employees (no known prior EEO activity) were not subjected to the same, similar or any adverse treatment.

74.    The retaliatory treatment that Plaintiff was being subjected to by Defendants was obvious to his co-workers who could and did observe the distress that it caused Plaintiff.

75.    Defendants' unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

76.    The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot further offer any legitimate reason for their unlawful conduct.

77.    Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

78.     Defendants' retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiffs' rights of because of his engagement in protected EEO activity.

79.     As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

80.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.   Further, Defendants' treatment and actions were ongoing.

81.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a.  Award compensatory damages of Three Hundred Thousand Dollars ($300,000.00);

b.  Award lost wages and benefits, with interest;

c.  Reinstatement;

d.  Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

e.  Award reasonable attorney fees, costs, and expenses incurred for this action;

f.  Order Defendants to institute a policy and procedure to be implemented against discrimination;

g.  Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

h.  Supervisory training for the supervisors at issue herein;

i.  Award equitable, declaratory, and injunctive relief; and

j.  Award such other and further relief as this Honorable Court deems just and proper.

**COUNT THREE**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. §§ 2000e, *et seq*.**
**(Employment Discrimination on the Basis of Race)**

82.  Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

83.  As an African American, Plaintiff is a member of a protected class.

84.  Plaintiff was subjected to the adverse employment actions complained herein by Defendants, including when it intimidated Plaintiff about taking his agreed upon naps, placed Plaintiff on AWP, required him to submit weekly reports, required him to attend weekly meetings, falsely accused him of performing below standards, required him to submit to a FFD, solicited complaints against Plaintiff from his coworkers, addressed Plaintiff in a demeaning manner, provided a knowingly undeserved negative performance evaluation, convened a PEB to terminate Plaintiff, revoked his computer accounts and terminated his employment.

85.  Defendants' foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

86.  Defendants knew that Plaintiff is African American prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected because of his race.

87.     Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (African American).

88.     Defendants have limited, segregated and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his race (African American).

89.     Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

90.     Plaintiff's race was a determining factor in Defendants' unlawful conduct toward him.

91.     Plaintiff's race was a motivating factor in Defendants' unlawful conduct toward him.

92.     The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot further offer any legitimate reason for their unlawful conduct.

93.     Defendants' aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiff's rights of his because of his race (African American).

94.     Defendants discriminated against Plaintiff because of his race by engaging in, tolerating or failing to prevent racial discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

95.     As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

96.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.   Further, Defendants' treatment and actions were ongoing.

97.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a.   Award compensatory damages of Three Hundred Thousand Dollars ($300,000.00);

b.   Award lost wages and benefits, with interest;

c.   Reinstatement,

d.   Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

e.   Award reasonable attorney fees, costs, and expenses incurred for this action;

f.   Order Defendants to institute a policy and procedure to be implemented against discrimination;

g.   Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

h.   Supervisory training for the supervisors at issue herein;

i.   Award equitable, declaratory, and injunctive relief; and

17

j.   Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FOUR
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. §§ 2000e, *et seq.*
### and
### Rehabilitation Act of 1973, as amended,
### 29 U.S.C. § 794, *et seq.*
### (Hostile Work Environment)

98.   Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

99.   As a result of Plaintiff's protected status and engagement in protected EEO activity, Plaintiff's supervisors routinely humiliated him and engaged in a persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII and the Rehabilitation Act.

100.   Plaintiff was regularly and continually subjected to harassing conduct that as alleged throughout this Complaint, which created a hostile and abusive work environment.

101.   Plaintiff believes that he was subjected to a hostile work environment based on his disability (narcolepsy), race (African American) and because of his engagement in protected activity.

102.   Defendants' unlawful conduct was unwelcome as shown by Plaintiff's repeated formal and informal EEO complaints.

103.   Defendants' deliberate conduct by the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

104.   Plaintiff was subjected to harassment because of his race (African American), his disability (narcolepsy) and because of his engagement in protected activity, and harassment unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

105.   Defendants knew or should have known of the harassment.  Defendants failed to adequately investigate the harassment and took no effective, immediate or remedial action.  Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

106.   By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendants acted with malice or with reckless or callous indifference to Plaintiff's complaints.

107.   As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

108.   Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Further, Defendants' treatment and actions were ongoing.

109.   Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a.  Award compensatory damages of Three Hundred Thousand Dollars ($300,000.00);

b.  Award lost wages and benefits, with interest;

c.  Reinstatement;

d.  Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

e.  Award reasonable attorney fees, costs, and expenses incurred for this action;

f.  Order Defendants to institute a policy and procedure to be implemented against discrimination;

g.  Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

g.  Supervisory training for the supervisors at issue herein;

h.  Award equitable, declaratory, and injunctive relief; and

i.  Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FIVE
### (Equitable Relief)

110.    Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

111.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendants and could result in further illegal actions on the part of Defendants, by and through their respective agents, servants and employees.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.  Order Defendants to institute a policy and procedure to be implemented against discrimination;

b.  Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

c.  Supervisory training for the supervisors at issue herein; and

d.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

112.    Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

By: _donna williams rucker/rsa_

DONNA WILLIAMS RUCKER (DC # 446713)
JEANETT HENRY (DC # 411052)
RUCKER, BROWN & HENRY, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006-4104
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@ruckerlawpc.com
        jhenry2085@aol.com

February 12, 2014                Counsel for Plaintiff